IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| ROBERT WOMACK, | ) | Case No.  17-10344 (BLS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| ANDREW R. VARA, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No.  17-50200 (BLS) |
| | ) | |
| ROBERT F.  MARTIN, | ) | |
| | ) | Docket Reference No.  1, 18 |
| Defendant. | ) | |
| _____ | ) | |

Hannah Mufson McCollum, Esquire          Robert F. Martin
Office of the United States Trustee          P.O. Box 1940
U.S. Department of Justice          Wilmington, DE 19899
844 King Street, Suite 2207          *Pro Se*
Lockbox #35
Wilmington, DE 19801
*Counsel for Andrew R. Vara*
 *Acting United States Trustee, Region 3*

## OPINION[1]

The matter before the Court is the United States Trustee's Complaint for Injunctive

Relief, Fines and Civil Contempt (the "Complaint") [Adv. Docket No. 1] against Robert F.

Martin ("Mr. Martin" or the "Defendant").  The United States Trustee alleges that Mr. Martin has

been providing services as a petition preparer in violation of 11 U.S.C. § 110 and in violation of

two prior Consent Orders entered by this Court.  For the reasons that follow, the Court will enter

---

[1]          This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal
Rule of Bankruptcy Procedure § 7052.

judgment in favor of the United States Trustee and accord relief largely consistent with that requested in the Complaint.

## JURISDICTION, VENUE AND STANDING

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 110.[2]  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

The United States Trustee has standing to file and prosecute the Complaint pursuant to 11 U.S.C. § 110(j)(1), which provides as follows:

> A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States Trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or United States Trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

The United States Trustee also enjoys standing and authority to proceed herein pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586.

## INTRODUCTION

Mr. Martin operates a business in the state of Delaware which he has described as "short sale consulting."[3]  The business strategy is as follows:  Mr. Martin identifies homes scheduled for

---

[2]    Separately, Mr. Martin has consented to the jurisdiction of this Court pursuant to the terms of the Second Consent Order (as hereinafter defined and identified):

> The Defendants hereby waive any objection or defense to jurisdiction of this Court and this Court shall retain jurisdiction over the Defendants and this matter in order to enforce the terms and conditions of this Consent Order or otherwise implement this Consent Order.

[3]    August 2, 2017 Trial Transcript at p. 157-160 (hereinafter "Trial Tr. at p. ___").

sheriff's sale, contacts the homeowner and offers to pursue either (i) a short sale[4] or (ii) a loan

modification with the homeowner's mortgage company on behalf of the homeowner.  The goal is

to achieve a better economic result than would otherwise be expected from a sheriff's sale of the

home.  In the event of a successful short sale, Mr. Martin testified that he would typically obtain

a fee of the greater of 3% of the purchase price or $5,000.  The trial record does not reflect how

Mr. Martin would be compensated in the event of a loan modification.

Mr. Martin's business strategy requires not only that the mortgage holder be receptive to a

short sale, but that a buyer for the property be located.  At trial, he did not dispute testimony from

the United States Trustee that he will on occasion make the purchase offer himself, and that he

uses the alias "Robert Fitzgerald' when he does so.[5]

---

[4]    A short sale is a transaction defined as any sale of real estate that generates proceeds that are less than the amount owed on the property. A real estate short sale typically occurs when a lender and borrower decide that selling a piece of property, thereby absorbing a moderate loss, is preferable to having the borrower default on the loan.

[5]    Trial Tr. at p. 44-45:

MR. WEST:  Yeah, I believe it's either – I believe it was a short sale, but I wasn't focused on the contents of the document as much as I was on Page 3 of this document.  And it lists contact information.  And, on the contact information, it lists Diana Dixon and Robert Fitzgerald.

We asked Mr. Martin, at his deposition, who was Robert Fitzgerald.  He indicated that that was him and that's his middle name.  But I suspect that it – he says everything doesn't always fit into the block, and that's why his last name may have been cut off on this.

But I suspect that he uses the name Robert Fitzgerald as, you know, representing the Debtor for either modification or short sale assistance, because, if we flip back a few pages, you'll see that the – Ms. Sullivan and Mr. Thorpe provided that power of attorney for Robert Martin.  And that's just behind this mortgage assistance document.  And then Mr. Martin signed an agreement of sale using that power of attorney, which is also attached.

So, we have Mr. Martin as representing the seller, and then we have Mr. Fitzgerald, you know, representing the same parties.  But, if we – if I recall Mr. Martin's testimony from his deposition, it was that he usually makes an offer that's 50 percent of the mortgage price.  So, it would be Mr. Martin on all sides of

The threshold challenge to implementing this business strategy is the compressed timeline:  the record reflects that Mr. Martin would usually only have a matter of days, or a few weeks at most, to try to put together a deal before the sheriff's sale.  The gravamen of the United States Trustee's Complaint is that, solely in order to buy more time, Mr. Martin encourages his clients to file for bankruptcy relief under Chapter 13, and assists them with the preparation of the necessary forms and materials.  The record reflects that Mr. Martin is not an attorney.

Mr. Martin has twice before been the subject of inquiry and action by the United States Trustee.  In 2011, the United States Trustee commenced an adversary proceeding in the Chapter 13 case *In re Carmona*, 10-14026 (BLS), Adv. Pro. No.  11-51994 (BLS).  The United States Trustee alleged that Mr. Martin was acting as a petition preparer in violation of 11 U.S.C. § 110.  A Consent Order resolving that litigation was entered by this Court on March 28, 2012 (the "First Consent Order") [Adv. Docket No. 22] by which Mr. Martin agreed to disgorge fees and refrain from acting as a petition preparer in the future.

Two years later, the United States Trustee filed a new complaint against Mr. Martin, alleging that he had acted as a petition preparer in at least 19 cases in violation of the terms of the First Consent Order.  *In re Todd*, Case No. 13-13186 (BLS), Adv. Pro. No. 14-50000.  That

---

the transaction, not similar to some of the DIP Lenders in Chapter 11 cases.

But basically, he would be – he'd have  power of attorney for the seller. He'd be the short sale negotiator. And he'd also be the purchaser on the transaction.  So, I think, to create some distance between him wearing all hats in the transaction, he uses the name Robert Fitzgerald versus Robert Martin, is my opinion of what's going on here.  And I believe there are some other documents within here, if you'd like me to see if I can locate them, where it references –

MR. MARTIN:  Your Honor, if I may, I will concede that my name is Robert Fitzgerald Martin and don't see the need for them to explore other documents.

litigation was again resolved via a Consent Order dated March 28, 2014 (the "Second Consent Order") [Adv. Docket No. 13].  Mr. Martin again agreed to disgorge fees and to refrain from acting as a petition preparer in the future.

Subsequent to entry of the Second Consent Order, the United States Trustee alleges that Mr. Martin returned to his prior practice of encouraging homeowners to file for relief under Chapter 13, and assisting them in the process of filing a case.  By the Complaint, the United States Trustee alleges that Mr. Martin solicited Mr. Robert Womack, the owner of a home in Claymont, Delaware that was imminently scheduled for sheriff's sale.  The United States Trustee further alleges that Mr. Martin assisted Mr. Womack in the preparation and filing of a Chapter 13 petition.  As discussed more fully below, the United States Trustee alleges that Mr. Womack (a 78-year-old man) was not adequately informed by Mr. Martin regarding the Chapter 13 filing and its potential consequences, and that his efforts constituted a violation of the provisions of Bankruptcy Code § 110 and the First and Second Consent Orders.

**Procedural Posture**

The United States Trustee commenced this proceeding with the filing of the Complaint. The Complaint contains six separate Counts, each predicated upon alleged violations of Bankruptcy Code § 110 and the First and Second Consent Orders.  The remedies sought by the United States Trustee include (i) civil fines of $500 (trebled under 11 U.S.C. § 110(1)(2)(D)) for each violation of § 110; (ii) injunctive relief prohibiting Mr. Martin from engaging in specified conduct in the future; (iii) disgorgement of fees and reimbursement thereof to debtors that Mr. Martin assisted; and (iv) additional fines and a finding of civil contempt against Mr. Martin.  Mr. Martin has filed an Answer to the Complaint [Docket No. 11] as well as a Motion to Dismiss the

Complaint [Docket No. 18].  The Court has held Mr. Martin's Motion to Dismiss in abeyance and considers it in the context of the fully developed record in this case.

After the exchange of discovery, and a series of status conferences and pretrial hearings, the Court set trial in this matter to occur on July 18, 2017.  On that date, Mr. Martin (representing himself *pro se*) and counsel for the United States Trustee appeared and advised the Court that they were ready to proceed.  However, Mr. Womack was not present to testify as a witness, and the Court adjourned trial to August 2, 2017.

Trial was held on August 2, 2017.  The Court heard the testimony of Mr. Womack, Mr. Richard Keen (a client of Mr. Martin), Ms. Diana Lee Dixon (a part-time employee of Mr. Martin) and Mr. Michael C. West, a bankruptcy auditor for the Office of the United States Trustee.  In addition to the testimony of these witnesses, the Court admitted into evidence voluminous exhibits, and heard extensive argument from Mr. Martin and counsel for the United States Trustee.  Mr. Martin did not testify at trial[6], and offered no witnesses on his behalf.  This matter is ripe for decision.

## DISCUSSION

### A.   Legal Standard

Congress amended the Bankruptcy Code in 1994 to address perceived abuses by non-attorney petition preparers.  In enacting § 110, Congress observed that:

> Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country.  While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors.  These preparers often

---

[6]   Trial Tr. at p. 8-9.

> lack the necessary legal training and ethics regulation to provide
> such services in an adequate and appropriate manner.  These
> services may take unfair advantage of persons who are ignorant of
> their rights both inside and outside the bankruptcy system.

H.R. Rep. No. 103-835, at 56 (1994).  Courts applying § 110 since its enactment have construed it relatively broadly in order to give effect to its remedial mandate.  "Courts have rejected attempts to evade the statute by persons who claims they were not compensated for preparing documents, but merely were collecting money for other services."  2 Collier on Bankruptcy ¶ 110.02[1] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).

In many ways, Bankruptcy Code § 110 is a model of clarity:  it describes in detail conduct forbidden by the statute, *see* 11 U.S.C. § 110(e)(2), and identifies a range of remedies and punishments for violations of the statute.  *See* 11 U.S.C. §§ 110(h),(i) and (j).   The leading treatise on bankruptcy law describes the scope of § 110 as follows:

> Section 110(e)(2) gives examples of the types of legal advice that
> petition preparers cannot give, including:
>
> –    whether to file a bankruptcy petition;
>
> –    whether relief under a particular bankruptcy chapter is
>      appropriate;
>
> –    whether debts will be discharged in a bankruptcy case;
>
> –    whether the debtor will be able to retain a home or other
>      property if a case is commenced;
>
> –    advice concerning the tax consequences of a case or
>      whether tax claims will be discharged;
>
> –    whether a debtor can or should reaffirm any debts;
>
> –    how to characterize property of debtors in bankruptcy
>      documents;

&ndash; advice about bankruptcy procedures or rights.

All of these topics clearly involve legal determinations that a non-attorney should not be making.  And it is hard to conceive of debtors who go to bankruptcy petition preparers who do not ask for information and advice on many of these topics.

2 Collier on Bankruptcy ¶ 110.05[2].

If a violation of § 110 is found, available remedies and sanctions include disgorgement of fees, fines and injunctive relief.  The Court notes that both the First and Second Consent Orders issued against Mr. Martin enjoined him from engaging in specified conduct and required disgorgement of fees.  As noted above, by the Complaint, the United States Trustee again seeks fines (trebled) against Mr. Martin, disgorgement of fees and a broad injunction barring Mr. Martin from engaging in conduct that violates § 110.  As to all counts in the Complaint, the United States Trustee bears the burden of proof.

**B.** <u>**Analysis**</u>

At the trial, the United States Trustee relied primarily on the testimony of Mr. West, the Bankruptcy Auditor.  The record developed at trial reflects that he has substantial experience as an investigator and auditor not only for the Office of the United States Trustee but also for the United States Secret Service[7].  He testified credibly and candidly at length regarding his familiarity with Mr. Martin and his business practices as a result of Mr. West's involvement with proceedings leading to the entry of the First and Second Consent Orders.[8]  Before turning to his investigation into Mr. Womack's case, Mr. West testified that he had analyzed a series of other,

---

[7] Trial Tr. at p. 10, 130.

[8] Trial Tr. at p. 12.

recent Chapter 13 filings which he believed were the work of Mr. Martin as a petition preparer.

Specifically, Mr. West testified that he had studied the petitions and related materials filed in cases filed by Louise Queen[9], Joan Iverson[10], Robert Thorpe[11], and Maria Rosaria Difilippo[12].  He identified similarities, or consistent errors, among each of the submissions that strongly indicated that the documents had been prepared by the same person.[13]  He further testified that these petitions had been delivered to the Clerk's Office by Mr. Martin or by Ms. Diana Dixon, a woman in Mr. Martin's employ.[14]  Based upon his investigation and his analysis

---

[9]       Case No. 16-11198 (BLS)

[10]      Case No.  16-11475 (BLS)

[11]      Case No.  16-11477 (BLS)

[12]      Case No.  17-10798 (BLS)

[13]      *See, e.g.,* Trial Tr. at p. 27-28:

> Mr. West: So – and then I noticed some other similarities on these petitions.  I'm sorry if I'm jumping ahead on you.  But if we look at Number 12, which is the Iverson petition, and we look at Number 14, the Thorpe petition, if you notice the Social Security Number in Block 3, the four digits are all on one line, as opposed to in the individual lines that are on – printed on the form.
>
> So, it – and I went to the Court's website and pulled down the PDF form.  And the fillable PDF form that the Court has doesn't allow you to put more than one digit in the block.  So, this wasn't prepared on the Court website.  It was prepared by some other software.  And the error seems to be consistent.
>
> And I'm sorry if I'm jumping ahead, but Mr. Womack's petition has a similar type of formatting error.  And that's at Tab 4.  All the number are – they're not bunched up in the same block, but it looks like all the numbers are bunched up together as opposed to being spread out.  So, I know that Mr. Womack's petition looks like it was filled out on a similar type of software, not the software that – not the PDF fillable form provided by the Court.
>
> So, there seems to be some consistency in the petitions in how they were prepared.  And it wasn't from the Court's, you know, fillable PDF software.

[14]      Trial Tr. at p. 24, 26.  Ms. Dixon testified at trial that, on at least one occasion when she filed a petition at the Bankruptcy Court Clerk's Office, she was asked by staff personnel what her relationship was to the filing debtor.  Ms. Dixon acknowledged that her response ("My sister-in-law") was a lie.  Trial Tr. at 139-140.

of dozens of filed documents, Mr. West concluded that Mr. Martin was again providing legal

advice and assisting Chapter 13 debtors with the preparation of their cases:

> Q:      So Mr. Martin has said that he doesn't help people file for
> bankruptcy.  If that's true, how do they all know to file bankruptcy
> to stop the Sheriff's Sale?
>
> A:      It seems to be an amazing coincidence that the first 34
> people filed using just a bare-bones petition, they're paying the
> fees in installments, and they only had one creditor on the matrix.
> And then the additional – each of the additional people on my
> Schedule 38 also, despite the fact that none of them know each
> other, they filed bare-bones petition, they – fees in installments, a
> waiver of credit counseling.  Nobody ever files a plan; no one ever
> files schedules.  All their cases end up getting dismissed.
>
> So, here I'm not sure how this knowledge is being
> communicated to each of these individuals, but their only common
> thread that I can see between the bankruptcy – all these bankruptcy
> filings is Mr. Martin seems to be the common thread.[15]

Both Mr. West and Mr. Womack testified regarding the circumstances surrounding Mr.

Womack's Chapter 13 filing.  In a nutshell, Mr. Womack is a 78-year-old man who owned a

home in Claymont, Delaware that his daughter lived in.  She defaulted on the mortgage (without

advising Mr. Womack), and that home went into foreclosure.  Mr. Womack learned of the

foreclosure and imminent sheriff's sale relatively late in the process, and he responded to a

mailer from Mr. Martin that promised a better alternative to a sheriff's sale.[16]  As discussed more

fully below, Mr. Womack met several times with Mr. Martin, and eventually filed a Chapter 13

petition for the purpose of stopping the sheriff's sale.

Mr. Womack appeared at the trial and testified candidly and credibly.  His testimony

---

[15]      Trial Tr. at p. 46-47

[16]      Trial Tr. at p. 100-102.

reflects that he was frightened and concerned about the potential consequences of the foreclosure process and whether it would adversely affect his pension and his finances.[17]  He testified that he worked closely with Mr. Martin to address the situation, and that he signed a bankruptcy petition and related materials that had been prepared for him.

Mr. Martin denies preparing those materials, and stressed in cross-examining Mr. Womack that Mr. Womack's daughter owned a computer and a printer, so that it was at least possible that she prepared the materials.[18]  Mr. Womack testified that he did not know who prepared the documents, but he did testify that Mr. Martin was in the room when the documents were presented for signature.  However, Mr. West testified with specificity that there were several factors to Mr. Womack's filings that, in his judgment, linked the case to Mr. Martin. First, the terms of the Womack short sale proposal were consistent with terms of other deals Mr. Martin had done.[19]  Second, Mr. West's discussions with Mr. Womack revealed that he had been working closely with Mr. Martin, that he had filed a bankruptcy, that he did not have an attorney, and that he knew strikingly little about his bankruptcy case.[20]

---

[17]    Trial Tr. at p.  101.

[18]    Trial Tr. at p. 123.

[19]    Trial Tr. at p. 20.

[20]    Trial Tr. at p. 31; *see also* Trial Tr. at p. 127-128:

> Q:    Okay, but you don't recognize this?  Sitting here today, you said this is your signature but you don't really recognize this document?
>
> A:    No, no.
>
> Q:    Okay.
>
> Q:    Do you know that the kind of bankruptcy you filed is a Chapter 13?

The next witness was Mr. Richard Keen, a Chapter 13 debtor who testified that he had worked with Mr. Martin.  Mr. Keen testified that he had been in financial difficulties, and that his house was scheduled for a sheriff's sale, when he heard from Mr. Martin.  He described their interactions as follows:

> Q:  Did he tell – did he tell you that he had a plan as to how to stop the sheriff's sale?
>
> A:  Well, in my case I guess it was kind of close to the sale by the time I contacted him.  And he said the only way to avoid the sale at this point – I don't have time to do anything else – we'll have to do a bankruptcy.  That'll stop it.
>
> Q:  So, he didn't have enough time to do what he normally does for a short sale?
>
> A:  Right
>
> Q:  And he told you the only way to stop it was to file a bankruptcy?
>
> A:  Yes
>
> Q:  Did he give you the bankruptcy documents?
>
> A:  Well, he came out and we set down at the table and he kind of told me what to fill out.  And I asked him, I said, can I get in any trouble for this, because I don't want to mess around with the bankruptcy court.  He said, no, it's – you're

---

> A:  Yeah, I heard that it was a 13.
>
> Q:  Do you know the difference between a Chapter 13 and a Chapter 7?
>
> A:  No.
>
> Q:  Okay.  Did you know that a Chapter 13 is a 3-5 year repayment plan for your creditors?  You're in bankruptcy for 3-5 years making payments. Did you know that?
>
> A:  Not clearly I didn't know that.
>
> Q:  Okay.  Do you – the bankruptcy is currently pending, so that means you have to propose a plan.  Do you have a plan to repay your creditors?
>
> A:  I don't even have a plan, no.  Because I thought that maybe the short sale would save me out of this.  You know, really I was thinking .... I just thought that that would save me, that's what I thought.

> not really going to file bankruptcy.  You're going to put this
> petition in and that'll stop the sheriff's sale.  Then you'll
> get some paperwork, and when you do, don't worry about
> it.  Don't answer it and that'll be it.[21]

Interestingly, Mr. Keen testified that Mr. Martin's efforts brought about a good result: the

property was sold outside of a sheriff's sale, Mr. Keen received $17,000 from the sale, and Mr.

Martin received his $5,000 fee.[22]  The record reflects there were some personal disagreements

that arose between Mr. Keen and Mr. Martin[23] in the process of closing the transaction and

vacating the property, but the Court observes that Mr. Keen's testimony was credible and not

meaningfully contradicted or impugned on cross-examination.[24]

Based on the foregoing testimony and evidence, the Court finds that Mr. Martin has

provided services to Chapter 13 debtors in this Court in violation of Bankruptcy Code § 110 and

the First and Second Consent Orders.  This Court is particularly troubled by the repetitive nature

of the conduct, and by the serious risk of harm to people who subject themselves to the

jurisdiction of this Court.  It is abundantly clear that Mr. Martin's clients know little to nothing

about bankruptcy and the significant consequences that accompany a bankruptcy filing.  Facing

the loss of their homes, they are desperate and vulnerable.  And while there may be the

occasional positive result in a case (as evidenced by Mr. Keen's experience), that does not

---

[21]   Trial Tr. at p. 75-76.

[22]   Trial Tr. at p. 76-77.

[23]   Trial Tr. at p. 83-84.

[24]   See, e.g., Trial Tr. at p. 78:

> Q     Did Mr. Martin give you the bankruptcy documents?
> A     Yes, and we sat and went over them.  He, you know, told me what to do,
>        and then we signed them and he took them with him.

change the fact that Mr. Martin's "business model" is based upon practices that violate federal law and orders of this Court.

The United States Trustee has proven at trial that Mr. Martin has violated § 110 and the First and Second Consent Orders in six cases: *In re Womack* - Case No. 17-10344 (BLS); *In re Queen* - Case No. 16-11198 (BLS); *In re Iverson* - Case No. 16-11475 (BLS); *In re Thorpe* - Case No. 16-11477 (BLS); *In re Difilippo* - Case No. 17-10798 (BLS); and *In re Keen* - Case No. 16-12766 (BLS). By the Complaint, the United States Trustee has requested remedies of disgorgement of fees received; imposition of $500 fines in each case, trebled to $1,500 in each case; injunctive relief barring further, similar conduct; and imposition of a further fine based upon a finding of civil contempt for violation of the First and Second Consent Orders.

Judgment shall be entered against Mr. Martin and in favor of the Office of the United States Trustee on all counts. Trebles fines shall be imposed as to all six cases. Mr. Martin shall be required to disgorge fees received in those cases and reimburse the relevant debtors. The Court shall enjoin Mr. Martin from future conduct violating § 110, consistent with the injunctive provisions he has previously agreed to – and violated – in the First and Second Consent Orders. Finally, the Court will impose a civil sanction against Mr. Martin in the amount of $25,000 on account of his repeated violations of applicable law and this Court's Orders.

## CONCLUSION

For the reasons stated above, the Court finds and concludes that Mr Martin has provided services to debtors in this Court in violation of 11 U.S.C. § 110 and the First and Second Consent Orders. Judgment shall be entered in favor of the United States Trustee as to all Counts in the Complaint. Mr. Martin's Motion to Dismiss the Complaint is denied. The United States Trustee

-14-

is directed to submit a form of Judgment Order consistent with this Opinion within fourteen (14)

days of the date hereof.

BY THE COURT:


Dated: Wilmington, Delaware
        October 25, 2017                       Brendan Linehan Shannon
                                               United States Bankruptcy Judge